```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


In re Application of:           )
                                )
THE REPUBLIC OF ECUADOR and     )
DR. DIEGO GARCÍA CARRIÓN, the   )
Attorney General of the         )
Republic of Ecuador,            )
                                )
            Applicants,         )      CIVIL ACTION NO.
                                )      11-mc-91287-DPW
                                )
For the Issuance of a           )
Subpoena Under 28 U.S.C         )
§ 1782(a) for the Taking of     )
a Deposition of and the         )
Production of Documents by      )
DR. GREGORY S. DOUGLAS for      )
Use in a Foreign Proceeding,    )
                                )
            Respondent,         )
                                )
and                             )
                                )
CHEVRON CORPORATION,            )
                                )
            Intervenor.         )
```

MEMORANDUM AND ORDER
December 18, 2015

The Republic of Ecuador and its civil attorney general, Dr. Diego García Carrión (collectively, the "Republic") submitted an application under 28 U.S.C. § 1782(a) for an order allowing them to serve a subpoena on Dr. Gregory S. Douglas.  They seek to require Dr. Douglas to produce documents for use in *Chevron Corporation and Texaco Petroleum Corporation* v. *The Republic of Ecuador*, PCA Case No. 2009-23, a foreign Bilateral Investment

Treaty arbitration. Dr. Douglas and Chevron Corporation, as intervenor, have moved for a protective order, which the Republic opposed, modifying the scope of the Republic's requested discovery. For the reasons stated below, I will grant the Republic's motion for a substitute subpoena and grant the motion of Dr. Douglas and Chevron for a protective order but only to the extent of providing protection from production to draft reports and specified attorney-client communications.

## I. BACKGROUND

In 1993, indigenous Ecuadorians brought an environmental suit in the Southern District of New York against Texaco Inc., and its subsidiary Texaco Petroleum Corporation, for polluting the Oriente region of the Amazon rain forest while operating oil wells there from 1964-1992. The plaintiffs contended that operations resulted in the illness and death of numerous people. The case was dismissed in the district court on *forum non conveniens* grounds, *Aguinda* v. *Texaco, Inc.*, 945 F. Supp. 625, 627 (S.D.N.Y. 1996). The Second Circuit vacated and remanded to consider dismissal upon the condition that Texaco consent to Ecuadorian jurisdiction, *Jota* v. *Texaco, Inc.*, 157 F.3d 153, 155 (2d Cir. 1998). On remand, the case was again dismissed by the district court, *Aguinda* v. *Texaco, Inc.*, 142 F. Supp. 2d 534, 536 (S.D.N.Y. 2001), on the conditions identified by the Second

Circuit, which thereafter affirmed.  *Aguinda* v. *Texaco, Inc.*, 303 F.3d 470, 473 (2d Cir. 2002).

In 2003, some of the Ecuadorian plaintiffs re-filed their suit in Ecuador's Lago Agrio Court against Chevron.  *Republic of Ecuador* v. *Chevron Corp.*, 638 F.3d 384, 390 n.5 (2d Cir. 2011).  As the Third Circuit put it, "[i]t is an understatement to characterize the Lago Agrio litigation as contentious, as both sides of the litigation vigorously have opposed nearly every move by the other, and have accused the other side of criminal or fraudulent conduct in the course of the litigation."  *In re Chevron Corp.*, 633 F.3d 153, 157 (3d Cir. 2011).  On February 14, 2011, the Lago Agrio court entered judgment for the Ecuadorian plaintiffs in the amount of $18 billion.

In 2009, while the Lago Agrio litigation was still pending, Chevron commenced arbitration under the United Nations Commission on International Trade Law (UNCITRAL).  *Chevron Corp. And Texaco Petroleum Corp.* v. *The Republic of Ecuador*, PCA Case No. 2009-23.  Chevron alleged that the Lago Agrio litigation was unfair and denied it due process as required under the U.S.-Ecuador Bilateral Investment Treaty.  Specifically, Chevron alleged that the Lago Agrio court was corrupt, was not independent or impartial, acted in collusion with the plaintiffs, and unjustifiably denied Chevron's defense that Ecuador had released Chevron from liability, all in violation of

Chevron's due process rights.  Chevron sought to obtain a judgment from the Arbitration panel that would preclude international enforcement of what became the $18 billion award by the Lago Agrio court.  *See In re Chevron Corp.*, 633 F.3d at 158-59 (giving factual history of this dispute in addressing an application by Chevron for a subpoena to conduct discovery using 28 U.S.C. § 1782(a) for the Arbitration).

Unlike the Lago Agrio litigation, the Republic of Ecuador, not the Ecuadorian plaintiffs, is opposing party to Arbitration with Chevron.  As preparation for the Arbitration, Chevron brought "an extraordinary series of at least 25 requests to obtain discovery from at least 30 different parties" under 28 U.S.C. § 1782(a) in district courts throughout the United States.  *Id.* at 159.

In response, the Republic has filed at least nine applications for discovery pursuant to the same statutory authority.  This is one of those applications.  Here, to defend against Chevron's claims in the Arbitration, the Republic seeks discovery from Dr. Gregory S. Douglas, a resident of Rockland, Massachusetts with twenty-five years of experience in environmental labs analyzing crude oil samples from water, waste, and biota.  Dr. Douglas submitted a number of expert reports on Chevron's behalf rebutting both court-appointed experts and experts for the Ecuadorian plaintiffs in the Lago

Agrio litigation.  He also submitted an expert report in support of Chevron's merits brief to the Arbital Tribunal.  The Republic seeks broad discovery of the bases of Dr. Douglas's reports and expert opinions.

Chevron moved for a protective order, arguing that the Republic's application was unduly burdensome, overbroad, and beyond the scope of Federal Rule of Civil Procedure 26.  The Republic opposed Chevron's motion, claiming that it was an attempt to "close the shades on this case denying to the Republic . . . the sunlight [Chevron] has enjoyed."

At a hearing held on January 3, 2012, I provided guidance on how the Republic of Ecuador was to limit its subpoena to appropriate bounds.  Subsequently, the parties made substantial progress in resolving their discovery disputes.  On May 9, 2012, the Republic filed a motion to substitute its subpoena.  The proposed subpoena was much narrower, requesting fewer categories of document and better shaping the bounds of those categories.  Protected categories of documents, such as draft reports or attorney-client communications, are no longer sought.  The proposed substitute subpoena addresses the concerns this Court raised in the hearing.  Although the parties are now closer to agreement on the proper scope of remaining discovery, a number of disputes endure.

## II. DISCUSSION

### A. *Statutory Requirements*

The threshold issue is a narrow one: whether compelled discovery process is appropriate in this jurisdiction for use in a foreign proceeding. Under section 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . upon the application of any interested person." 28 U.S.C. § 1782(a). The statute establishes requirements before a district court may grant an application under section 1782. First, the person from whom discovery is sought must be found in the district. Second, the proceeding for which his discovery is being sought must be "a foreign or international tribunal." Finally, the party applying for the discovery must be an "interested person."

Here, the Republic's application meets all of the statutory requirements. Dr. Douglas, according to an expert report he filed for Chevron in the Lago Agrio litigation, works in Rockland, Massachusetts. Thus, he can be "found" in the District of Massachusetts.

Second, neither party disputes that the Arbitration is a "foreign or international tribunal." *See Chevron Corp.* v. *Shefftz*, 754 F. Supp. 2d 254, 260 (D. Mass. 2010) (noting that

6

"international arbitral bodies operating under UNCITRAL rules constitute 'foreign tribunals' for purposes of § 1782."). Moreover, the third track of the Arbitration, which the tribunal plans to hold in order to quantify any liability and in which the Republic seeks to use these materials, is "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

Finally, the Republic is an "interested person" because it is the respondent in the Arbitration. *See, e.g., Intel Corp.* 542 U.S. at 256 (2004) ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").

## B. *Intel Discretionary Factors*

Once these statutory requirements are met, as they are here, a court may, but is not required to, grant the application. *Id.* at 264. The Supreme Court has provided four concerns for district courts to consider in determining whether to grant an application that meets the statutory requirements of § 1782. First, there is less of a need for § 1782(a) aid where "the person from whom discovery is sought is a participant in the foreign proceedings." *Id.* Second, a district court should consider the nature and character of the foreign proceedings, and the receptivity of the foreign body involved to U.S. judicial assistance. *Id.* Third, a district court should deny a

section 1782 application if it "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Id*. at 265.  Finally, a district court can reject or modify "unduly intrusive or burdensome requests."  *Id*.

The first Intel factor weighs in favor of granting the Republic's application.  Dr. Douglas is not a party to the Arbitration.  UNCITRAL Rules make no provision for requiring production of documents from non-parties, as opposed to parties. UNCITRAL Arbitration Rules Art. 24.3 (1976) ("At any time during the arbitral proceedings the arbitral tribunal may require the parties to produce documents, exhibits or other evidence . . . ."), International Bar Association Rules on the Taking of Evidence in International Arbitration, Art. 3.9 ("If a Party wishes to obtain the production of Documents from a person or organisation [sic] who is not a Party to the arbitration and from whom the Party cannot obtain the Documents on its own, the Party may, within the time ordered by the Arbitral Tribunal, ask it to take whatever steps are legally available to obtain the requested Documents, or seek leave from the Arbitral Tribunal to take such steps itself."); *see also In re Application of Republic of Ecuador*, 2011 WL 4434816, at *3 (N.D. Cal. Sept. 23, 2011).  Because the foreign tribunal cannot order the discovery sought by the Republic, the first factor weighs in favor of

granting the Republic's application. *See Shefftz*, 754 F. Supp. 2d at 261.

The second factor is neutral, because neither party provides convincing evidence regarding whether the Arbitral Tribunal would be receptive to this Court's assistance. There are, however, no allegations that the application is being used to circumvent the Arbitration's evidence-gathering restrictions, so the third factor weighs in the Republic's favor.

Instead, Dr. Douglas and Chevron argue that the Republic's request for discovery is overbroad, and compliance with it would be unnecessarily costly and unduly burdensome. Thus, they request a protective order from this court modifying the terms of the proposed subpoena and oppose the motion to substitute the subpoena. Under Rule 26(c), a protective order may issue upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

## C. *Objections to Further Discovery*

At this point, the discoverability of only two specific sets of materials remains contested. [Doc No. 47 p. 5; Doc. No. 48 p. 3]. First, the Republic seeks to discover the data and supporting documentation underlying five reports from the Lago Agrio litigation. Chevron and Dr. Douglas argue that those data should be protected. Second, the Republic of Ecuador seeks to

discover certain communications by Dr. Douglas: those with other expert witnesses, those with non-attorney Chevron employees, and those in which Chevron's counsel are merely copied on the e-mail but do not otherwise participate in the discussion.  Supporting documents and notes are also sought in connection with those communications.  Additionally, Chevron argues that additional discovery should either be limited entirely or partially because it is unnecessary at this point; it asserts that the Republic failed to pursue discovery adequately in recent years and that this discovery would be unreasonably cumulative.

    1.   <u>The Lago Agrio Reports</u>

I turn first to the documents and data related to and forming the basis for five expert reports prepared by Dr. Douglas in the Lago Agrio litigation.  When presented with the same issue, other courts have ordered materials underlying Lago Agrio expert reports to be disclosed in connection with the Treaty Arbitration.  *See, e.g., In re Application of Republic of Ecuador*, 280 F.R.D. 506, 513 (N.D. Cal. 2012) *aff'd sub nom*. *Republic of Ecuador* v. *Mackay*, 742 F.3d 860 (9th Cir. 2014).  I reach the same result.

Here, the parties dispute the precise status of these five reports in the Treaty Arbitration and therefore whether the underlying facts and data supporting the reports must now be produced.  The Republic states that these reports were relied

upon in Dr. Douglas's Treaty Arbitration reports, discussed in his testimony, and provided directly to the tribunal.  Chevron asserts that these reports were merely cited by, but not incorporated into, Dr. Douglas's arbitration report.  In other cases, the distinctions between a document cited by a testifying expert, one he relied upon, and one he fully incorporated into his report might be meaningful in determining what underlying facts must be produced in discovery.  But this particular arbitration requires, in many ways, a reevaluation of the Lago Agrio case on the merits, in order to determine what would have happened in the absence of the alleged corruption.  In that sense, the Lago Agrio litigation is a "case within the case."  *In re Republic of Ecuador*, No. C-10-80225 MISC CRB, 2010 WL 4973492, at *8 (N.D. Cal. Dec. 1, 2010).  In such a context, where the same expert testifies in both proceedings on the same subject, I conclude it is immaterial how Dr. Douglas presented his five Lago Agrio reports to the tribunal.

However Dr. Douglas packaged his research, it is clear that he generated a body of knowledge for the two cases, taken together, which formed the basis for his expert report in the arbitration.  *Cf. In re Application of Republic of Ecuador*, No. 4:11MC73-RH/WCS, 2012 WL 5519611, at *2 (N.D. Fla. Nov. 2, 2012) *aff'd sub nom. Republic of Ecuador* v. *Hinchee*, 741 F.3d 1185 (11th Cir. 2013) ("Dr. Hinchee was such an expert in the

11

underlying litigation. But Dr. Hinchee will not testify in the arbitration proceeding.  For work-product purposes, Dr. Hinchee should be treated as a testifying expert. He was hired to testify in the underlying—closely related—litigation, and he did testify.").  Treating these five Lago Agrio reports separately would, on the basis of an artificial distinction, impede the Republic of Ecuador's ability appropriately to address Dr. Douglas's testimony before the tribunal.  I follow the other courts that have addressed discovery in this matter and find that facts and data considered in producing reports for the Lago Agrio litigation must be disclosed in the Treaty Arbitration.

2.  Work-Product Protections and the Interpretation of Fed. R. Civ. P. 26

In attempting to protect Dr. Douglas's materials from discovery, Chevron presents an interpretation of Rule 26 that has been consistently rejected in parallel litigation across the country.[1]  *Republic of Ecuador* v. *Hinchee*, 741 F.3d 1185 (11th Cir. 2013); *Republic of Ecuador* v. *Mackay*, 742 F.3d 860 (9th Cir. 2014); *Republic of Ecuador* v. *For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)* [hereinafter "Bjorkman"], 735 F.3d 1179 (10th Cir. 2013).  In this respect, Chevron makes two

---

[1]  The parties previously disputed whether the pre-December 2010 version of Rule 26 or the current version should apply.  [Doc. No. 19].  All parties now agree that the current version governs.

12

contentions.  First, it argues that Rule 26(b)(3) provides a blanket protection for the materials of expert witnesses, because they are "prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  Second, Chevron argues that Rule 26(a)(2)(B) limits what must be produced to a narrow range of "facts or data considered by the witness" and excludes much of the discovery sought by the Republic of Ecuador here.  Both of these contentions misread Rule 26 and its 2010 revisions.  The three Courts of Appeals to consider Chevron's arguments each provided thorough, and substantially identical, readings of the Rules.  I adopt those interpretations, which I briefly restate here.

The work product protection codified in Rule 26(b)(3) does not extend to testifying experts.  This is clear from the text of the Rule, which lists a series of persons and entities, such as insurers or agents, who might be a party's representative for work-product purposes; the list conspicuously does not include "experts."  *Hinchee*, 741 F.3d at 1190.  "This silence speaks volumes," given that the Rule's drafters then dealt with experts in the following subsection. *Id*.  Moreover, certain expert witness materials — draft reports and attorney-expert communications — are specifically identified as exempt from discovery.  Fed. R. Civ. P. 26(b)(4)(B)-(C).  Those provisions

would be rendered superfluous by the creation of a blanket work product protection for testifying witnesses. *Hinchee*, 741 F.3d at 1191.

The history of the Rule also makes clear that expert witnesses are not categorically protected by the work product doctrine – and indeed clarifies that the specific materials sought by Ecuador are discoverable.  The 1970 revised rules, the first formally to incorporate the work product doctrine, included a comment expressly rejecting "decisions which have sought to bring expert information within the work-product doctrine."  Fed. R. Civ. P. 26, advisory committee notes (1970) *cited by Bjorkman*, 735 F.3d at 1185.  Likewise, the 2010 Advisory Committee notes, for amendments which added specific protections for certain expert materials, make clear that "the expert's testing of material involved in litigation, and notes of any such testing would not be exempted from discovery by this rule" and that "inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule."  Fed. R. Civ. P. 26, advisory committee notes (2010), *cited by Hinchee*, 741 F.3d at 1191.  The drafters' intent, which in this case is reliably captured by the explanatory notes, *Mackay,* 742 F.3d at 865, was unambiguously to exclude expert witnesses from the blanket protections of Rule 26(b)(3).

Finally, the purpose of the Rule bolsters these textual and historical arguments. The work-product doctrine is meant to protect the work of lawyers. *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The rationale for protecting attorneys does not extend to testifying expert witnesses, who play a fundamentally different role in litigation. Expert witnesses do not craft legal strategy; they provide testimony. "Cloaking all materials prepared by or for a testifying expert under the work-product doctrine inhibits the thorough and sharp cross examination that is vital to our adversary system." *Hinchee*, 741 F.3d at 1192. For each of these reasons, expert witnesses are not covered by the work-product doctrine and Rule 26(b)(3). Rather, it is essential that the materials of expert witnesses be discoverable by opposing parties.

Chevron also argues that the 2010 revisions to Rule 26(a)(2) limit what expert materials must be disclosed. Prior to 2010, expert reports were required to disclose "data or other information" considered by the expert in forming his opinions; in 2010, that phrase was revised to require disclosure of only "the facts or data" considered. *Mackay*, 742 F.3d at 868-69. This change was meant to protect two specific kinds of material from disclosure: draft expert reports and communications between experts and counsel. *Id. citing* Fed. R. Civ. P. 26, advisory committee notes (2010). Only those two types of discovery were

15

to be affected. *Bjorkman*, 735 F.3d at 1186.  For all other materials, the Rule drafters intended that "'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." *Id. citing* Fed. R. Civ. P. 26, advisory committee notes (2010).

Thus, the Eleventh Circuit held that a testifying expert's notes and his communications with other non-attorneys must be produced in discovery. *Hinchee*, 741 F.3d at 1186.  The Ninth Circuit likewise noted that communications between the expert and anyone other than the party's counsel were discoverable. *Mackay*, 742 F.3d at 863-64.  The Tenth Circuit affirmed a district court order allowing Chevron to withhold only draft reports, attorney-client communications, and documents specifically covered by Rules 26(b)(4)(B) and (C).  *Bjorkman*, 735 F.3d at 1181-82.  These holdings required the production of precisely the same categories of document at issue in this proceeding.

Chevron's efforts to distinguish the decisions of the Courts of Appeals is unpersuasive.  It argues that those courts failed to examine the role of an expert "in the context of legal strategy."  Chevron argues that its experts here should be understood to be working in furtherance of an overall litigation strategy and therefore protected by Rule 26.  Chevron presents

16

no case law in support of this proposition nor any argument that Dr. Douglas was more involved in legal strategy than the experts considered by the many other courts addressing the matter. Its argument would allow parties to avoid discovery by simply labeling their experts legal strategists, undermining the structure of the Rules. That argument must be rejected.

As previous courts have held, the work-product doctrine only allows Dr. Douglas to withhold from discovery the "core opinion work-product of Chevron attorneys." *Hinchee,* 741 F.3d at 1196. But, the exceptions provided in the Rule remain operative. Communications between Dr. Douglas and attorneys relating to his compensation or identifying facts, data or assumptions for Dr. Douglas to use in forming his opinion are not protected and must be produced. Fed. R. Civ. P. 26(b)(4)(C). In addition, Dr. Douglas's communications with non-attorneys – including communications in which attorneys are merely copied, but in which no attorney work product exists – and notes must be provided.

### 3. Improper Delay and Cumulative Discovery

In addition to seeking the protection of the two specific categories of material described above, Chevron also seeks the more general protections of Rule 26(b)(2)(C), which imposes certain limits on unreasonable discovery.

First, Chevron argues that the Republic of Ecuador is not entitled to discovery here because it has failed to press its claims adequately over the last three years. Rule 26(b)(2)(C)(ii) of the Federal Rules of Civil Procedure requires courts to limit discovery where the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. This provision does not bar the Republic from conducting the discovery it seeks. The Republic was not obligated, as Chevron suggests, to contact the Court every time it might have found this discovery useful. The Republic has, on more than one occasion, informed this Court of recent decisions in parallel litigation. Those filings have renewed its request for action by this Court. To the extent that those filings were not enough to secure an immediate decision, it is not the fault of the Republic of Ecuador.

Second, Chevron argues that discovery should be limited under Rule 26(b)(2)(C)(i), which requires a court to limit discovery that is "unreasonably cumulative or duplicative." Chevron asserts that the Track 3 issues for which Dr. Douglas's expertise might be relevant – how much contamination remains on site and how toxic that oil is – have already and more thoroughly been addressed by two other experts, Dr. John Connor and Dr. Thomas McHugh. It may be that the testimony of Drs. Connor and McHugh proves more relevant to the third track of the

arbitration; it may even be likely. However, that does not make the information sought by the Republic of Ecuador unreasonably cumulative. Dr. Douglas is *Chevron*'s expert. The Republic seeks to understand and potentially contest the basis for his opinions. To do that, the Republic needs the information that Dr. Douglas, specifically, used in forming his opinions. Data on the same subject from a different expert is not an adequate substitute. What is more, Drs. Connor and McHugh each rely upon Douglas's findings at various points in their own reports. These relationships show that Douglas's reports are not duplicative of the Connor and McHugh reports but independent and distinct. The Republic's discovery requests are not unreasonably cumulative.

### III. CONCLUSION

For the reasons above, I GRANT the Republic's motion for a substitute subpoena (Dkt. No. 33). I GRANT in part and DENY in part Dr. Douglas' and Chevron's motion for a protective order (Dkt. No. 16) which is applicable to the substitute subpoena.

Accordingly, it is hereby ORDERED that all documents sought in the Republic's substitute subpoena shall be produced, with

the exception of draft reports and protected communications between Dr. Douglas and counsel.

                                                ***/s/ Douglas P. Woodlock***
                                                DOUGLAS P. WOODLOCK
                                                UNITED STATES DISTRICT JUDGE